IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mary Louise Britt, | Civil Action No. 2:11-1089-TMC-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Mary Louise Britt, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 41 years of age on her alleged disability onset date of July 11, 2008. (R. at 14, 17.) The plaintiff claims disability due to degenerative disc disease, multiple sclerosis, vascular headaches, GERD, and memory problems. (R. at 17.) She has a high school diploma, and has past relevant work as a cake decorator, embroidery machine operator, housekeeper, mail clerk, stocker, and sewing machine operator. (R. at 31, 21.)

The plaintiff filed an application for DIB on July 15, 2008. (R. at 119.) Her application was denied initially and on reconsideration. (R. at 14.) An Administrative Law Judge ("ALJ") held a hearing on July 16, 2010. (R. at 14.) In a decision dated July 28, 2010, the ALJ found that plaintiff was not disabled. (R. at 14-22.) The Appeals Council denied the plaintiff's

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> (2) The claimant has not engaged in substantial gainful activity since July 11, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3) The claimant has the following severe impairments: multiple sclerosis and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for work requiring climbing of ladders or scaffolds or more than occasional stooping, twisting, crouching, kneeling, crawling, balancing, or climbing of stairs or ramps. Her work must permit her to alternate between sitting and standing positions at 60 minute intervals.
>
> (6) The claimant is capable of performing past relevant work as a mail clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2008, through the date of this decision (20 CFR 404.1520(f)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may

3

carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges, among other various objections, that the ALJ erred in (1) failing to give controlling weight to the opinions of her treating physicians; (2) failing to perform a proper credibility analysis; (3) failing to perform a proper residual functional capacity analysis; (4)

4

acting with hostility towards plaintiff and her case; and (4) failing to include the plaintiff's multiple sclerosis impairment in the hypothetical to the vocational expert.

The Court will address each alleged error in turn.

## I. Treating Physicians

The plaintiff first contends that the ALJ committed reversible error in his consideration of the medical opinions of treating physician, Dr. Rutkumar P. Jani

On May 5, 2010, Dr. Rutkumar P. Jani, filled out a detailed RFC form stating that the plaintiff is medically disabled. (R. at 324-326.) Dr. Jani's Residual Functional Capacity Form states in detail that the plaintiff suffers serious work-related limitationsas a result of multiple arthralgias, weakness of the limbs, degenerative disc disease, and multiple sclerosis. (R. at 325.) Dr. Jani specifically notes on the form that the plaintiff's multiple sclerosis (MS) "disease is progressive," that he "cannot predict the speed of the progress," but stops short of saying that the plaintiff is medically disabled as a result of this disease. (R. at 324-326.)

Dr. Jani also stated that the plaintiff is unable to engage in any climbing, balancing, stooping, crouching, or crawling. (R. at 325-326.) He indicated that she can only occasionally kneel as a result of her multiple arthralgias, joint pain, and weakness of limbs caused by her severe diagnoses of multiple sclerosis and degenerative disc disease. (R. at 325-326.) Dr. Jani further notes that the plaintiff is only able to perform work at less than the sedentary level. (R. at 324-325.) He found that she can occasionally lift less than 5 pounds, stand for no more than 2 hours, and sit for no more than 1 hour total during an 8 hour workday. (R. at 324-325.) Dr. Jani also noted on the RFC that the plaintiff's physical capabilities are severely affected. (R. at 325.) The MS and degenerative disc disease affects her ability to reach, feel, push, pull, see, and speak. (R. at 325.) Dr. Jani noted that the plaintiff has multiple pains with weakness and severe restrictions in a work environment that require her to avoid temperature extremes, heights, and moving machinery. (R. at 326.) He noted, in particular, that the plaintiff's multiple joint pains and weakness of her limbs cause her to "become unsteady." (R. at 326.) As Dr. Jani commented, the plaintiff

5

has a significant history with multiple arthralgias, joint pain, and weakness in her limbs as a result of her diagnoses of multiple sclerosis and degenerative disc disease. (R. at 374.)

The ALJ gave these opinions "substantially less than full weight." (R. at 20.) The plaintiff would imply (Pl. Brief at ) that the ALJ's analysis included no more than the following:

> In May 21010, the claimant's treating family practitioner, Dr. Rutkumar P. Jani, completed a Medical Source Statement (physical). He indicated the claimant could perform work related activities at substantially less than sedentary exertional level. Dr. Jani's opinions are not persuasive and are given substantially less than full weight. They are not supported by his own progress notes and are inconsistent with other substantial evidence of record including the progress notes of the claimant's treating neurologist and the State Agency medical consultants who reviewed the records in August 2008 and April 2009 and assessed the claimant's ability to engage in work related activities.

(R. at 20.) Respectfully, the ALJ did much more. (See R. at 17.)

The ALJ considered Dr. Jani's treatment records and concluded that clinical examinations were consistently unremarkable, except for some findings of low back tenderness. (R. at 17.) While an MRI scan of the lumbar spine revealed mild degenerative changes, there was no associated spinal canal sensory nerve root impingement. *Id.* In fact, the ALJ noted that, in September 2008, Dr. Jani stated, "I have recommended to her tat [sic] she should get epidural [sic] steroids because she is looking for disability and unless all the options are tried, I would not feel comfortable giving disability recommendation." (R. at 268.)

The ALJ also noted an unremarkable clinical examination in August 2009 and another the following month. (R. at 17.) A 24-hour Holter monitor test was unremarkable and multiple serological tests returned normal. *Id.* In November 2009, the ALJ characterized the plaintiff as being "found to have possible MS." *Id.* The ALJ emphasized that Dr. Jani believed that the leg cramps were restless leg syndrome; he assessed her with chronic bilateral leg cramps. *Id.*

6

So, to the extent the plaintiff contends either that the ALJ was (1) summary in his treating physician analysis or that he (2) failed to identify, specifically, objective medical evidence contained in Dr. Jani's records, the argument is unpersuasive for its inaccuracy. The plaintiff, however, has not stopped here, and has affirmatively raised actual evidence in response to any belief of the ALJ that somehow Dr. Jani's opinions and findings were not well supported by his own treatment notes, objective medical evidence, and the record as a whole.

The Court would summarize the highlights of the plaintiff's evidence:

- Dr. Jani noted the plaintiff's diagnostic history of MS and previous pain in the back. (R. at 252.)
- On physical objective examination, Dr. Jani noted "[e]xamination of the low back reveals that the patient has positive tenderness in the mid lumbosacral area roughly at about L1- L2 area." (R. at 252.)
- Dr. Jani assessed the plaintiff with MS, back pain, and lumbosacral spine with some scoliosis. (R. at 252.) He also noted reticulation in the first lumbar area. *Id.*
- A CT scan of the plaintiff's lower spine (without contrast) was performed on August 29th, 2007. (R. at 207.) The CT scan indicated that the plaintiff had "[m]ild to moderate facet arthrosis seen at L4-5 level on the left and mild facet arthrosis seen at L5-S1 level." *Id.* The final impression was facet arthrosis at L4-5 and L5-S1. *Id.*
- On physical exam, on November 29, 2007, Dr. Jani objectively found that the plaintiff had positive tenderness in the lumbosacral area. (R. at 250.)
- On December 10, 2007, the plaintiff returned to Dr. Jani because she continued to have significant recurrent pain in her back. (R. at 249.) Dr. Jani noted the plaintiff's history of having low back pain and he also noted that her CT scan results were consistent with arthropathy of L1-L2. (R. at 249.) After a thorough physical exam, Dr. Jani diagnosed the plaintiff with lumbosacral pain with arthropathy. *Id.*

7

- On June 16, 2008, Dr. Jani diagnosed the plaintiff with low back pain and prescribed Celebrex and Prednisone. (R. at 244.)
- On June 24, 2008, Dr. Jani noted, on physical exam, that the plaintiff has some radiation of pain to the bilateral lower extremities. (R. at 434.)
- On July 3, 2008, Dr. Jani noted that there was radiculopathy and some tingling down the lower extremity and he ordered an MRI. (R. at 242.) The plaintiff was diagnosed with low back pain, severe GERD, and anemia. *Id.*
- On July 22, 2008, the plaintiff presented to Dr. Jani with numbness in the right and left leg. (R. at 241.) Dr. Jani noted that the plaintiff had been diagnosed with MS and was taking Avonex injections every week but continued to have pain. Dr. Jani noted that the plaintiff was given a Medrol Dose Pak but it did not help much and he had tried to send her to physical therapy, but she could not afford it. *Id.*
- On a September 15, 2008 office visit, Dr. Jani noted that the plaintiff "carries the diagnosis of broad based disc protrusion at L4-L5, L5-S1" and she had come in that day having right "great toe" pain, especially at night. (R. at 240.)
- On February 6, 2009, the plaintiff underwent an MRI of her brain, both with and without contrast. (R. at 258.) The MRI found numerous abnormalities, including white matter hyperintensities and white matter lesions associated with multiple sclerosis:

> There are numerous white matter hyperintensities. There is periventricular white matter adjacent to the right posterior and occipital horn. This is consistent with periventricular leukomalacia. Small less that 1cm white matter hyperintensities are seen within the right lateral occipital lobe. There are white matter hyperintensities seen in the posterior parietal white matter bilaterally and in the subcortical white matter of the frontoparietal lobe superiorly, and also in the mid parietal subcortical white matter, left greater than right. There are also small lesions seen superior to the bodies of the lateral ventricles bilaterally. These white matter hyperintensities can be due to small vessel

>                        disease with numerous microinfarcts, vasculitis,
>                        or demyelinating lesions of multiple sclerosis".

(R. at 258.)

- On August 10, 2009, Dr. Jani interpreted the July 2009 MRI as showing a "central annular tear at L5-S1 with facet arthropathy at L4-L5, L3-L4.  (R. at 277.)

The plaintiff has also emphasized the treatment records and observations of other doctors associated with Dr. Jani, whether by referral or otherwise, including but not limited to:

- Dr. Eva Jane Rawl noted that neurologically, the plaintiff's deep tendon reflexes were brisk at all of her upper extremity sites bilaterally, but at the knees, she was 1-2+, and at the ankles 1+, and had downward deflecting toes.  (R. at 255.)
- On January 23, 2009, a Dr. Pusey noticed her slurred speech upon physical exam. After physical exam, Dr. Pusey again diagnosed Plaintiff with MS and continued her on Avonex injections.
- Dr. Thomas Holbrook examined plaintiff's radiographic studies, noting her degenerative disc disease at L5-S1. He further noted her diagnostic history of multiple sclerosis and diabetes.  On physical exam, he found that the plaintiff's deep tendon reflexes were hypoactive at the knees and ankles.  (R. at 257.)
- After reviewing her previous medical tests and physically examining the plaintiff, Dr. Pusey diagnosed her with MS, vascular and nonspecific headaches, and backache. (R. at 211.) Dr. Pusey asked the plaintiff to work on her posture and if this did not help, he noted she could try Neurontin for her backaches. *Id.*

The undersigned is not a doctor.  Neither by training nor law is the Court qualified to pit the plaintiff's evidence against that cited by the ALJ and render some expert arbitration of the two.  The standard of review disallows it.  The Court can assess

9

whether the ALJ's reasoning followed establish legal principles and whether it represented a fair characterization of the record. But, to elect the plaintiff's fair but abbreviated corpus of evidence over the ALJ's comparably fair and abbreviated corpus of evidence is impermissible.

As discussed, the ALJ noted much, if not all, of the plaintiff's now recited evidence, both as to the objective testing and the accompanying medical assessments. (R. at 17-18.) In total, he simply found evidence of less remarkability than the plaintiff would ascribe the record. (R. at 17-18; see, e.g. R. at 211, 255-56, 272, 274-76.)

The serious and repeated diagnoses of multiple sclerosis and of lower back pain and leg cramps is indisputable. But, diagnosis is not severity. And, even where MS is notably degenerative, it is by no means universally severe among its victims or of the same pace in its destructive effects. Dr. Jani's notes are not enthusiastically adamant that the impairments are severe in the way the plaintiff demands. As already recounted, they could even be characterized as qualified. (R. at 17-18; see, e.g. R. at 211, 255-56, 272, 274-76.) The Court would not fault the ALJ for having found greater impairment if he had but certainly would not criticize him, now, where he did not. Simply because the plaintiff has effectively produced competing evidence or interpretations of the same evidence, which might have resulted in a contrary interpretation of Dr. Jani's records is of no moment. *See Blalock*, 483 F.2d at 775. The ALJ has offered substantial evidence for his conclusion; it is not a cherry-picked record as the plaintiff would complain. The decision, in this respect, at least, should be affirmed.

To the extent the plaintiff argues that the ALJ failed to properly consider the factors set forth in 20 C.F.R. § 404.1527 for evaluating a treating physician's opinion, the Court disagrees. In his decision the ALJ explicitly stated that he considered the opinion evidence in accordance with the requirements of the regulations (R. at 19). *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (stating that a reviewing court has no reason to depart from its general practice of taking a lower tribunal at its word when it declares that it has

considered a matter). Moreover, in his decision, the ALJ discussed Dr. Jani's practice (family practitioner), and the nature and extent of the treating relationship (R. at 17). *See* 20 C.F.R. § 404.1527(d). The Court finds that this treatment reflects an appropriate application of the regulations.

## II. Plaintiff's Credibility

The plaintiff next complains that the ALJ improperly considered his credibility. Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

11

The ALJ acknowledges this two-step framework. (R. at 19.) Unfortunately, he appears to have made no application of it. (R. at 19-21.)

The ALJ emphasized his concerns over Dr. Jani's records, first, and how those perceived inconsistencies undermined the plaintiff's subjective representations. (R. at 20.) He then noted that the plaintiff complained of adverse side effects from her medication. (R. at 20; see R. at 38.) The plaintiff admitted that she was able to work with her side effects for years. (R. at 38.) She said that her symptoms had gotten worse, but, as noted by the ALJ, there were no documented complaints of such side effects to her physicians. (R. at 20.)

The ALJ also noted that the plaintiff claimed she had limited activities, including performing personal care, light housekeeping, and light cooking. (R. at 21; see R. at 44.) The ALJ found, however, that she had previously reported more rigorous activities, including ironing clothes, work, preparing meals, doing some housework, driving a car, grocery shopping, reading, occasionally sewing and writing, attending special church functions, and talking with others on the telephone. (R. at 154-58.)

These, however, are all essentially step two considerations, although even in this respect the ALJ makes no specific finding. More critically, the ALJ does not make the initial and essential determination that the plaintiff does or does not have impairments which might reasonably be anticipated to cause the kinds of symptoms and difficulty alleged. *Craig*, 76 F.3d at 591. The Court has already explained the significance of this first step. The ALJ did not perform it. As stated, this is more than a mere technicality. The initial determination governs the second. Whether the limitations present might hypothetically create certain anticipated symptoms in the abstract, limits the ALJ's ability to find, in this particular instance, that they somehow did not – produce what was otherwise anticipated.

Instead, here, without any transparent application of the framework, the ALJ makes simply an ultimate determination that the "severity of the plaintiff's subjective complaints . . . is not supported by the evidence." (R. at 21.) This is not the sort of reviewable analysis

12

required -- when the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Craig*, 76 F.3d at 596.

## III. Miscellaneous

The plaintiff has made other general objections to the ALJ's determinations concerning the plaintiff's residual functional capacity ("RFC") and whether there exists jobs in the national economy which she can perform. Of course, the Court's recommendation concerning the ALJ's credibility analysis necessarily reimplicates those determinations on remand. Additional comment is unnecessary, therefore.

Plaintiff's counsel has raised concern about the ALJ's disposition at hearing and the want of objectivity it implied. The Court has reviewed transcript passages emphasized by the plaintiff. Nothing in the record rises to the level of error or abuse, in the undersigned's view. Plaintiff's counsel has an obligation in fierce advocacy, even where the adjudicator is not warm or sympathetic. The Court certainly does not condone unnecessary belligerence or a fuse too short. The Court would expect the administrative tribunal at all times to be a venue of impartiality and decorum.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is therefore RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                        s/BRUCE H. HENDRICKS
                                                        UNITED STATES MAGISTRATE JUDGE

July 16, 2012
Charleston, South Carolina